RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 10, 5, 07
BY Dm

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| CAROL CORLEY | |
| versus | CIVIL ACTION NO. 06-0392<br>JUDGE TOM STAGG |
| STEVE PRATOR, SHERIFF<br>OF CADDO PARISH | |

## **MEMORANDUM RULING**

Before the court is a motion for summary judgment filed by the defendant, Caddo Parish Sheriff Steve Prator ("Sheriff Prator"). See Record Document 20. For the reasons stated below, the defendant's motion for summary judgment is **GRANTED.**

### **I. BACKGROUND**

On March 16, 2005, the plaintiff, Carol Corley ("Corley") was incarcerated at the Caddo Correctional Center ("CCC") for failing to timely complete a substance abuse program in violation of her probation. A booking deputy, Trellus McCain ("McCain"), processed Corley, noting on an inmate medical screening form that Corley was then taking Methadone, Lortab, and Soma for pain management.

McCain also noted that Corley was not suicidal or exhibiting abnormal behavior at the time. Later on March 16, 2005, Jennifer Jackson ("Nurse Jackson"), a nurse with CCC, reviewed Corley's medical screening form. She then contacted Corley and requested the name of her physician so that CCC could obtain Corley's medical records from him.[1] Corley identified her physician as Dr. Baker of Lafayette, a pain management doctor, but she could not recall his first name. Jackson also explained the "kite" communication system to Corley at that time.[2] Following Jackson's conversation with Corley, Carol Martin ("Nurse Martin"), also a nurse at CCC, attempted to locate a pain management doctor in Lafayette named Baker by searching the Internet and phone listings, but was not successful.

On March 18, 2005, another member of the nursing staff at CCC, Janice Graham ("Nurse Graham") performed a medical screening of Corley.[3] During the

---

[1]It is the policy of CCC to obtain prior medical records from an inmate claiming to be on pain medication before continuing such treatment.

[2]The "kite" communication system is the system inmates use at CCC to request medical treatment or request to see a physician.

[3]Corley had submitted a "kite" request to receive medical treatment for nausea and diarrhea. Additionally, pursuant to CCC policy, a medical screening must be performed for each inmate within two weeks of admission to the facility.

medical screening, Nurse Graham observed that Corley did not appear suicidal and did not exhibit withdrawal symptoms from the medications she had been taking prior to incarceration. Corley did, however, tell Nurse Graham she was nauseated, had diarrhea, and was also experiencing sinus problems and back pain.[4] Nurse Graham then gave Corley Dramamine and Tylenol Sinus to help with these symptoms. After this treatment, Corley did not request further medical assistance, either informally by asking a deputy or through the "kite" system.

Corley's mother, Betty Lamoreaux ("Lamoreaux"), came to CCC to visit Corley on March 19 and March 21, 2005.[5] According to Lamoreaux, during the visits Corley was in an upbeat mood and was talking about religion, which was not abnormal behavior for Corley. See Record Document 10, Ex. 11 at 28. Corley did tell Lamoreaux that she was having back pain and that she was unable to eat, but she

---

[4] Corley also claims that she had started hallucinating by this time. However, she admits that she did not tell anyone about her visions and did not exhibit any accompanying physical actions that would have indicated that she was hallucinating. See Record Document 20, Ex. 10 at 144-45, 148-49, 152-53, 154.

[5] Based on the portions of Lamoreaux's deposition provided in the record, the court has some confusion about which days Lamoreaux visited Corley at CCC. The court perceives Lamoreaux visited Corley on March 19 and March 21, 2005. However, the precise dates on which Lamoreaux saw Corley at CCC in no way affects the court's decision.

3

did not indicate that it was because she had not been taking her pain medication. However, Lamoreaux spoke with Corley on the telephone the morning of March 21, 2005, and noticed that Corley was talking "out of her head" and was not making sense. See Record Document 20, Ex. 11 at 26-27. Lamoreaux asked Corley if she was hallucinating, and Corley replied that she was not hallucinating but had been having vivid dreams. See id.[6]

On the afternoon of March 21, 2005, Corley was cleaning tables in the cafeteria when she felt "really sick with diarrhea" and asked the guard if she could return to her cell to use the bathroom. Record Document 20, Ex. 10 at 149. While in her cell, Corley retrieved two ink pens and stuck them in her eye sockets.[7] Corley was then taken to the Louisiana State University Medical Center where she received treatment for her injuries.

---

[6] On the day that Corley was incarcerated, Lamoreaux had called CCC and left a message with the medical department indicating that Corley had previously been on medication for pain management and should not be taken off of it "cold turkey." Record Document 27, Ex. G at 22-23. This call was not returned prior to Corley injuring herself.

[7] Corley claims that while in her cell, she had a hallucination that her two sons appeared before her, told her they were in heaven, and told her that she should come join them there. See Record Document 20, Ex. 10 at 146-47. She therefore stuck the ink pens in her eyes in an effort to commit suicide.

After suffering these injuries, Corley filed the instant suit under 42 U.S.C. § 1983 alleging that the defendant, Sheriff Prator, violated her constitutional rights by failing to provide her with adequate medical care. She also alleges that the defendant was negligent in failing to provide her reasonable medical care in violation of Louisiana Civil Code Article 2315. The defendant filed this motion for summary judgment, arguing that a constitutional or state law violation has not been established and that the case should therefore be dismissed.

## II. LAW AND ANALYSIS

### A. Summary Judgment.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

5

on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co.,402 F.3d 536, 540 (5th Cir. 2005).

**B.    Plaintiff's Section 1983 Claim.**

Corley alleges that the defendant, Sheriff Prator, violated her Fourth Amendment rights by depriving her of medical treatment and acting with deliberate indifference to her medical needs.[8] "[D]eliberate indifference to serious medical

---

[8]While the plaintiff made her section 1983 claim under the Fourth Amendment, she does not explain how failure to provide medical treatment violated her Fourth Amendment right to be free from unlawful search and seizure. Defendant also notes that the Fourth Amendment does not apply to claims of deliberate indifference. See Record Document 20. Case law regarding claims of inadequate medical care and deliberate indifference under section 1983 addresses violations of the Eighth Amendment's prohibition against cruel and unusual punishment. The court

needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). A violation of the Eighth Amendment is found if the plaintiff proves "objective exposure to a substantial risk of serious harm" and that "prison officials acted or failed to act with deliberate indifference to that risk." Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006).

"Deliberate indifference is an extremely high standard to meet." Id. at 346. See e.g. Norton v. Dimazana, 122 F.3d 286 (5th Cir. 1997) (claim based on constant but unsuccessful treatment of serious prolapsed rectum condition dismissed as frivolous); Stewart v. Murphy, 174 F.3d 530 (5th Cir. 1999) (summary judgment in favor of defendants upheld where medical staff rendered treatment for fatal bed sores but staff had failed to discover condition early, did not follow up on orders, did not follow prior recommendations, and did not read nurses' notes). It encompasses only unnecessary and wanton infliction of pain or an action that is repugnant to the conscience of mankind. See Farmer v. Brennan, 511 U.S. 825,

---

assumes that plaintiff meant to make a claim under the Eighth Amendment and proceeds accordingly.

839-40, 114 S. Ct. 1970, 1980 (1994); Estelle, 429 U.S. at 105-106, 97 S.Ct. at 292. Disagreement with the diagnostic measures or methods of treatment provided by prison officials does not state an Eighth Amendment claim for indifference to medical needs. See Norton, 122 F.3d at 292. Additionally, mere negligence in giving or failing to supply medical treatment will not support an action for deliberate indifference. See Stewart, 174 F.3d at 534.

When Corley arrived at CCC, she received a medical evaluation by the intake deputy who noted the medications Corley was taking prior to her incarceration. Nurse Jackson followed up with Corley and reviewed her medical screening form, and Nurse Hale attempted to locate Corley's previous pain management doctor, Dr. Baker, to obtain a copy of her medical records. Additionally, when Corley complained of nausea and diarrhea, she submitted a "kite" request for medical treatment and was promptly seen by Nurse Graham. She complained to Nurse Graham of nausea and diarrhea, back pain, and sinus problems and requested Dramamine and Sudafed. See Record Document 20, Ex. 10 at 133. Nurse Graham gave Corley Dramamine for her nausea and Tylenol Sinus to help alleviate her sinus problems. When a nurse promptly sees an inmate when the inmate requests medical

attention and treats her for the symptoms of which she complains, as is the case here, the high standard of deliberate indifference is not established.

For a prison official to be liable for violating the Eighth Amendment, the official must *know of* and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see also Hare v. City of Corinth, MS, 74 F.3d 633, 650 (5th Cir. 1996) (correct legal standard not whether jail officials "knew or should have known" but whether they had actual knowledge of inmate's risk of suicide and responded with deliberate indifference). At no time during her conversations with and evaluations by members of the CCC medical staff did Corley say that she was hallucinating or suffering from methadone withdrawal symptoms. Nor did Corley ever request methadone from anyone at CCC. In the record, Corley even admits that she had experienced methadone withdrawal during her previous incarceration and that she knew the symptoms she was experiencing were manifestations of methadone withdrawal. See Record Document 20, Ex. 10 at 142-43. However, she did not alert anyone at CCC to this fact or ask to receive

9

more of the drug. Corley also admits that she did not exhibit any physical signs of her hallucinations. See Record Document 20, Ex. 10 at 146 and 154. Thus, the defendant could not have known of Corley's condition because she did not tell anyone or exhibit any external signs of it prior to injuring herself, and without such knowledge, the defendant cannot be held liable for violating section 1983.

Plaintiff proceeds under the argument that for a governmental entity to be liable under section 1983, certain requirements must be met. The governmental entity must have an official policy or custom that is linked to the constitutional violation and reflects the entity's deliberate indifference to the injury caused. See Record Document 27. Corley's argument must fail because she cannot meet these requirements.

Corley argues that the defendant is liable for violating section 1983 by virtue of the medical screening and treatment policy in place at CCC regarding medical care for inmates. However, she does not identify a policy of CCC that meets the standard for deliberate indifference.[9] Corley initially cites CCC's general medical

---

[9]In response to plaintiff's memorandum in opposition to defendant's motion for summary judgment, the defendant filed two motions to strike with this court. The first was a "motion to strike unsupported and scandalous contentions of 'felony forgery' of medical records." See Record Document 34. This motion was made in

screening inmate treatment policy as the CCC policy linked to the alleged constitutional violation. Specifically, Corley points to CCC's practice of having nurses, as opposed to doctors, provide primary medical treatment to inmates as the policy or custom violative of section 1983. First, the fact that Corley was seen by nurses instead of doctors is not a constitutional violation. See Callaway v. Smith County, 991 F.Supp. 801, 809 (E.D. Tex. 1998).[10] The fact that the medical treatment received is not the best money can buy does not meet the standard for deliberate indifference. See Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992).

---

response to plaintiff's allegations that the medical staff at CCC is guilty of criminal forgery because the nurses on staff write treatment orders in the inmates' charts and note that such treatment is per the verbal order of the medical director of the CCC. The second was a motion to strike the affidavit testimony of Dr. John H. Clark, Jr., a physician with experience in the field of medical treatment of inmates who offered his expert opinion that the medical practices at CCC were below the national standards for correctional healthcare. See Record Document 36. The court considers the felony forgery argument extraneous to the issue at hand. Moreover, the court did not consider Dr. Clark's opinion in granting the motion for summary judgment on the section 1983 claim; therefore, the defendant's motions to strike are both **MOOT**.

[10]The District Court for the Western District of Louisiana also recently held that treatment by nurses rather than physicians is not a constitutional violation in a Report and Recommendation adopted by District Judge Melancon. See Doucet v. Noel, No. 05-1365, 2007 WL 781338 at *4 (W.D. La. Feb. 16, 2007).

Second, the mere fact that the plaintiff disagrees with the medical treatment she received also is not sufficient grounds for a section 1983 violation. See Norton, 122 F.3d at 292. Third, this argument also does not change the fact that any inmate who requested to see a physician could do so; Corley simply never asked to see one. See Record Document 27, Ex. A at 16-17. Fourth, as previously discussed, Corley did not tell anyone she was experiencing hallucinations or withdrawal symptoms, nor did she exhibit physical signs of such ailments. Thus, the prompt treatment by qualified nurses for the symptoms of which Corley complained in no way indicates that the defendant was purposefully indifferent to a substantial risk of serious harm in violation of Corley's constitutional rights.

Corley additionally argues that the fact that CCC had physicians see inmates at CCC only "occasionally" and that nurses provided the primary medical care for inmates constitutes deliberate indifference to the medical needs of the inmates. However, according to CCC Health Services Medical Director Sheila Wright ("Wright"), two physicians come to CCC to see patients every Tuesday and Thursday. See Record Document 27, Ex. A at 14. Members of the CCC medical

staff also can call physicians at Louisiana State University Medical Center as needed. This does not equate to "occasional" treatment.[11]

Moreover, the evidence plaintiff presents in her argument on this point further supports the court's finding that Sheriff Prator is not liable for showing deliberate indifference to Corley's medical needs. "Medical records of...examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Id. (citations and quotations omitted). Thus, the undisputed fact that Corley received multiple examinations, was administered medication, and failed to complain about hallucinations or withdrawal symptoms is sufficient to exculpate Sheriff Prator under the stringent deliberate indifference standard. See Gobert, 463 F.3d at 346.

What the plaintiff is attempting to do here is transform an episodic act by CCC--the medical treatment of the plaintiff--into a policy or custom of the prison. However, Corley provides no evidence of official CCC policies in the record other

---

[11] Additionally, while nurses do examine inmates, triage them in order of severity of medical condition, and treat them according to standing orders of affiliated physicians, they do not "prescribe" medication for inmates and all actions by the nurses are reviewed by a physician. See Record Document 27, Ex. A at 15-16. None of these actions constitute the unauthorized practice of medicine as alleged by the plaintiff. See id. at 16-19.

13

than the treatment she received at CCC. Thus, she fails to indicate a policy or custom of CCC that would render Sheriff Prator liable under section 1983. Moreover, even assuming that the episode of Corley's treatment was, in fact, indicative of CCC's medical policies, those policies do not meet the elevated level of dereliction required for a finding of deliberate indifference. For a state jail official to be liable for episodic acts or omissions, the official must have had subjective knowledge of a substantial risk of serious harm to the inmate and to have subsequently acted with deliberate indifference. See Hare, 74 F.3d at 650. As discussed above, Sheriff Prator did not have subjective knowledge of a substantial risk of serious harm to Corley, and as such, he is not liable for deliberate indifference under section 1983.

To support a finding of deliberate indifference, a defendant's act must also indicate that he subjectively *intended* for the harm to occur. See Thompson v. Uphsur, 245 F.3d 447, 458-459 (5th Cir. 2001). Corley has produced no evidence to support such a conclusion, while the defendant has produced sufficient evidence to show just the opposite: that the defendant was concerned with Corley's condition and provided her with medical treatment to alleviate her nausea, diarrhea, and sinus

problems. There is no evidence that the defendant's behavior rose to the level of "egregious intentional conduct [as] required to satisfy the exacting deliberate indifference standard." Gobert, 463 F.3d at 351. Moreover, promptly treating Corley for the symptoms of which she complained in no way can be construed as the "unnecessary and wanton infliction of pain repugnant to the conscience of mankind" requirement for a finding of deliberate indifference. See Farmer, 511 U.S. at 839-40, 114 S.Ct. at 1980-81.

The defendant need only inform the court of the basis for his motion for summary judgment and identify those parts of the record that he believes demonstrate the absence of a genuine issue of material fact. Once that burden is satisfied, the burden then falls upon the plaintiff to demonstrate the existence of a genuine issue of material fact. See Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

Corley has not complained that she was denied medical treatment when she requested it. She also has not denied that she was treated for the symptoms of which she specifically complained. Moreover, she admits not only that she did not tell anyone that she was having hallucinations but also that she did not exhibit any physical manifestations of the hallucinations, meaning no one watching her would

have known she was hallucinating at the time. No evidence has been submitted showing that CCC medical staff refused to treat her, ignored her complaints, intentionally treated her incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. This is not sufficient to establish a genuine fact issue as to whether an Eighth Amendment violation occurred. Corley communicated with three different nurses, received two medical evaluations, and was promptly treated with the type of medications she requested for the symptoms she complained of and exhibited. It is amply clear that the defendant was neither reckless nor deliberately indifferent to Corley's medical needs. Because this court finds that the plaintiff has not raised genuine issues as to facts which would adequately support a conclusion of "deliberate indifference to serious medical needs," the claim against the defendant must be dismissed.

## C.  Plaintiff's State Law Claim.

Finally, Corley claims that Sheriff Prator committed actionable wrongful conduct under Louisiana Civil Code Article 2315 by negligently failing to provide her with adequate medical treatment.[12] Louisiana state courts recognize a four-part

---

[12]Plaintiff makes clear in her memorandum in opposition to defendant's motion for summary judgment that this claim does not include allegations that the

duty/risk analysis test in determining whether a party is negligent under state law. See Mart v. Hill, 505 So.2d 1120, 1122 (La. 1987). Under the duty/risk analysis, a court determines (1) whether defendant owed plaintiff a duty of care, (2) whether defendant breached that duty of care, (3) whether the conduct in question was the cause in fact of plaintiff's injuries, and (4) whether the conduct in question was the proximate cause of plaintiff's injuries. See id.

In Louisiana, prison authorities owe a duty to inmates to provide them with "reasonable medical care." Harper v. Goodwin, 41,053, p. 6 (La. App. 2 Cir. 5/17/06); 930 So.2d 1160, 1163. Thus, the first element of the test is satisfied. However, Corley fails to prove the second element of the test for negligence.

The defendant's actions in this case were reasonable. See Elsey v. Sheriff of the Parish of East Baton Rouge, 82-0938 (La. App. 1 Cir. 6/28/83); 435 So. 2d 1104 (court found that prison medical staff acted reasonably when inmate was not treated for asthma prior to a fatal asthma attack because he did not complain of any symptoms or exhibit any signs of respiratory distress). Corley was examined by two nurses within her first two days at CCC, first at intake and then after requesting

---

defendant negligently failed to prevent Corley from attempting suicide.

medical treatment. She was promptly treated for the symptoms of which she complained. At no point did Corley mention that she was having hallucinations or what she thought might be drug withdrawal effects, and more importantly, Corley herself admitted that upon looking at her, no one would be able to tell that she was hallucinating or going through withdrawal. See Record Document 20, Ex. 10 at 146. Because Corley cannot show that Sheriff Prator breached the duty of reasonable care he owed her, Sheriff Prator is not negligent under state law.[13] This claim is therefore dismissed.[14]

### III. CONCLUSION

Based on the foregoing analysis, the defendant's motion for summary judgment (Record Document 20) is **GRANTED**.

---

[13] To prove legal fault in a duty/risk relationship, an "ease of association" between the duty breached and the damages sustained must exist. Goodrich v. Caterpillar, 30,762, p. 3 (La. App. 2 Cir. 8/19/98); 717 So.2d 1235, 1237. The parties disagree whether an ease of association exists between Sheriff Prator's conduct and Corley's injury. However, the court does not need to address that issue, as Sheriff Prator did not breach the duty of reasonable care he owed Corley.

[14] The court notes that the defendant also argued in his motion for summary judgment that plaintiff failed to exhaust available administrative remedies before filing the instant case. However, the defendant has conceded that plaintiff did not fail to exhaust, and as such, that argument is no longer before the court.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 4th day of October, 2007.

_____
JUDGE TOM STAGG